**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**JOE TUBWELL**                                                                         **PLAINTIFF**

**V.**                                                                       **NO. 3:17-CV-15-DMB-RP**

**SPECIALIZED LOAN SERVICE LLC (SLS),**
**Agents and Successors, Loan No. 1012441108;**
**MORGAN STANLEY MORTGAGE CAPITAL**
**HOLDINGS LLC, Agents and Successors**                                   **DEFENDANTS**

## ORDER

Before the Court are four motions filed by Joe Tubwell: (1) a motion to remand, Doc. #10; (2) a motion for entry of default, Doc. #12; (3) a motion to strike, Doc. #13; and (4) a motion to extend the deadline to respond to the motion to dismiss filed by the defendants, Doc. #17.

**I
Procedural History**

On December 20, 2016, Joe Tubwell filed a "Verified Complaint" in the Circuit Court of DeSoto County, Mississippi, against "Specialized Loan Service, LLC (SLS), Agents and Successors, Loan No. 1012441108;" and "Morgan and Stanley Mortgage Capital Holdings LLC, Agents and Successors." Doc. #2. In his complaint, Tubwell alleges that the defendants collectively own a home refinance loan taken out by him and that, in servicing this loan, the defendants engaged in an array of wrongful conduct, including wrongfully refusing to accept his payments and "attempt[ing] to foreclose upon the property without having provided adequate notice or opportunity to the owner and co-borrower." *Id*. at ¶ 23. Tubwell asserts numerous claims, including causes of action brought under the "Fair Debt Collection Act" and the Truth in Lending Act. *Id*. at ¶¶ 35, 48. The complaint seeks: (1) rescission of the relevant loan; (2) $69,515.00 in damages "which defendants caused plaintiff to loose [sic] in failing to acknowledge the plaintiff's status as a co-borrower on the lone

[sic] and thereby prevented refinancing under lesser interest rate which has thereby cause [sic] plaintiff to fall behind on payments on home;" (3) injunctive relief; (4) "Actual Damages;" (5) punitive damages; and (6) attorney's fees, costs, and expenses. *Id*. at ¶ 54. Tubwell served the defendants with a copy of the summons and complaint on December 21, 2016. Doc. #1-1 at 28–31.

On January 20, 2017, the defendants, asserting diversity and federal question jurisdiction, removed the action to this Court. Doc. #1. Five days later, on January 25, 2017, the defendants filed a motion to dismiss. Doc. #7.

Tubwell filed a motion to remand on January 26, 2017, arguing that the defendants' removal was untimely. Doc. #10. On February 1, 2017, Tubwell filed a motion for entry of default. Doc. #12. The following day, on February 2, 2017, Tubwell filed "Plaintiff's Supplemental Motion to Remand and Response to Defendants' Notice of Removal Filed in United States District Court"— which the Court construes as a supplement to his remand motion,[1] Doc. #14; and a motion to strike the defendants' motion to dismiss, Doc. #13. On February 6, 2017, Tubwell filed a motion seeking an extension of the deadline to respond to the defendants' motion to dismiss. Doc. #17.

The defendants responded in opposition to the motion for entry of default on February 7, 2017, Doc. #18; to the motion to remand on February 7, 2017, Doc. #15; to the supplement to the motion to remand on February 16, 2017, Doc. #21; to the motion to strike on February 16, 2017, Doc. #20; and to the motion for extension on February 21, 2017, Doc. #23.

## II
## Motion to Remand

Pursuant to 28 U.S.C. § 1441(a), except for circumstances not present here, "any civil action

---

[1] Tubwell's supplement is in substance a memorandum brief in support of his motion to remand. While the Court's local rules require a memorandum brief in support of a motion to be filed at the time the motion is served, the Court will consider Tubwell's brief, and the defendants' response to it, since both documents concern the Court's subject matter jurisdiction. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts … have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.").

brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Generally, "under § 1441, removal is proper only when the court has original jurisdiction over at least one asserted claim under either federal question or diversity jurisdiction." *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 259 (5th Cir. 2014) (emphasis omitted). "The party seeking to remove bears the burden of showing that federal jurisdiction exists and that removal was proper. Any ambiguities are construed against removal and in favor of remand to state court." *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887 (5th Cir. 2014) (internal citations and quotation marks omitted). In this regard, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

In his motion to remand and supporting brief, Tubwell argues that the notice of removal was untimely and that this Court lacks subject matter jurisdiction of the action. In their notice of removal and response to the motion to remand, the defendants argue that this Court has federal question and diversity original jurisdiction. The defendants further argue that the Court has supplemental jurisdiction over Tubwell's state law claims.

### A. Federal Question and Supplemental Jurisdiction

28 U.S.C. § 1331 provides the district courts with original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." "A federal question exists only where a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Bd. of Comm'rs of S.E. La. Flood Protection Authority-East v. Tenn. Gas Pipeline Co. L.L.C.*, 850 F.3d 714, 721 (5th Cir. 2017) (internal quotation marks omitted). Where federal question (or

any other form of original jurisdiction) exists, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

In his supplemental filing, Tubwell seems to argue that there is no federal question jurisdiction because the federal statutes under which he brings some of his claims (the Fair Debt Collection Practices Act and the Truth in Lending Act) do not "provide exclusive jurisdiction … to the federal courts." Doc. #14 at 4–5 n. 3, 5–6 n.4. Tubwell also argues that this Court cannot exercise federal question jurisdiction if diversity jurisdiction is lacking. Both arguments fail.

First, federal question exists where a federal law "creates" the asserted action. *Tenn. Gas Pipeline Co. L.L.C.*, 850 F.3d at 721. There is no requirement that the law grant exclusive jurisdiction to federal courts. *See City of New Orleans v. United Gas Pipe Line Co.*, 390 F.Supp. 861, 864 (E.D. La. 1974) ("Exclusiveness is a consequence of having jurisdiction, not the generator of jurisdiction because of which state courts are excluded.") (citing *Pan Am. Petroleum Corp. v. Superior Ct. of Del.*, 366 U.S. 656, 662 (1961)). Second, federal question jurisdiction arises "because of the Federal questions presented in the record, and [does] not depend upon diversity of citizenship." *Ohio Tax Cases*, 232 U.S. 576, 586 (1914).

Here, Tubwell's state court complaint asserts claims created by two federal statutes – the Fair Debt Collection Practices Act and the Truth in Lending Act. Accordingly, this Court has federal jurisdiction over such claims and supplemental jurisdiction over Tubwell's state law claims, which all form part of the same controversy as the federal claims.

### B. Diversity Jurisdiction

Diversity jurisdiction requires that there be (1) complete diversity between the parties; and

4

(2) an amount in controversy in excess of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332; *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

### 1. Complete Diversity

Complete diversity "requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *Valliancourt v. PNC Bank, Nat'l Ass'n*, 771 F.3d 843, 847 (5th Cir. 2014). "For diversity jurisdiction, the party asserting federal jurisdiction must distinctly and affirmatively allege the citizenship of the parties." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001) (internal quotation marks and alterations omitted).

Of relevance here, the citizenship of a limited liability corporation is determined by the citizenship of all its members. *Tewari De-Ox Sys., Inc. v. Mtn. States/Rosen, Ltd. Liab. Corp.*, 757 F.3d 481, 483 (5th Cir. 2014). Furthermore, "§ 1332(c)(1), which deems a corporation of 'every State and foreign state' in which it is incorporated and the 'State or foreign state' where it has its principal place of business, applies to alien corporations." *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014).

Here, Tubwell is a citizen of Mississippi. Doc. #2 at ¶ 1. In its notice of removal, the defendants allege:

> Defendant SLS is a limited liability company formed in the State of Delaware and is a wholly owned subsidiary of Specialized Loan Servicing Holdings, LLC, a company whose ultimate parent is Computershare Limited, a publicly traded company on the Australian stock exchange. No member of SLS or its parent is a citizen of Mississippi. For diversity subject matter jurisdiction purposes, therefore, SLS is not a Mississippi citizen, and diversity is complete ….
>
> Morgan Stanley Mortgage Capital Holdings, LLC, is a wholly owned subsidiary of Morgan Stanley, which has no parent corporation and is not a Mississippi citizen. For diversity subject matter jurisdiction purposes, therefore, Morgan Stanley Mortgage Capital Holdings, LLC, is not a Mississippi citizen, and diversity is complete.

Doc. #1 at ¶¶ 6–7 (internal numbering omitted).

5

With regard to SLS, the notice of removal refers to three entities: (1) SLS; (2) Specialized Loan Servicing Holdings, LLC ("SLS Holdings"); and (3) the "ultimate parent" of SLS Holdings, Computershare Limited. Notably, the notice does not allege the members of SLS Holdings or the principal place of business or place of incorporation of Computershare Limited. While the defendants allege that "[n]o member of SLS or its parent is a citizen of Mississippi," this negative allegation is not a distinct and affirmative allegation of citizenship of SLS. *See Pel-State Bulk Plant, LLC v. Unifirst Holdings, Inc.*, No. 14-265, 2015 WL 631282, at *6 (M.D. La. Feb. 12, 2015) ("Instead of 'distinctly and affirmatively' alleging the citizenship of Plaintiff, the Amended Notice of Removal only states, in the negative, that Plaintiff is not a citizen of Massachusetts, Delaware, or Texas."); 13E Fed. Prac. & Proc. Juris. § 3611 (3d ed.) ("Neither is a negative statement that a party is not a citizen of a particular state usually sufficient, since this type of averment does not eliminate the possibility that the person might be a citizen of no state of the United States or other political entity.").

Similarly, the only allegation regarding Morgan Stanley Mortgage is that it is a wholly owned subsidiary of an entity that "has no parent corporation and is not a Mississippi citizen." Based on this negative statement, the defendants allege that Morgan Stanley Mortgage "is not a Mississippi citizen." Once again, these negative allegations fail to distinctly and affirmatively allege citizenship.

Because the defendants have failed to distinctly and affirmatively allege their citizenships, the Court must conclude that, at this time, it lacks diversity jurisdiction over Tubwell's claims. Should the defendants wish to re-assert the existence of diversity jurisdiction, they will be allowed to do so by, within fourteen days of this order, filing a statement of amendment pursuant to 28 U.S.C. § 1653 regarding only the jurisdictional allegations of the notice of removal to adequately allege

diversity jurisdiction.

## 2. Amount in Controversy

Having found that the notice of removal fails to sufficiently allege complete diversity, the Court declines at, this time, to address the subject of amount in controversy. Should the defendants re-assert the existence of diversity jurisdiction, the Court will consider the amount in controversy at such time.

## C. Timeliness of Removal

28 U.S.C. § 1446(b)(1) provides:

> The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

When a case has been removed, 28 U.S.C. § 1446(d) requires:

> Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

As grounds for remand, Tubwell argues that the defendants failed to file a notice of removal within the thirty-day limit of 28 U.S.C. § 1446(b)(1) because the defendants "did not provide notice of any filings upon the plaintiff [and] did not file the Notice in the State Court within the time allowed and required by statute." Doc. #10 at 2. In advancing his argument, Tubwell appears to conflate the requirement of § 1446(b)(1) that a notice of removal be filed within thirty days with the requirement of § 1446(d) that the removing defendants provide prompt notice to all adverse parties and the state court. These are separate provisions with separate requirements. The thirty-day limit in § 1446(b)(1) does not apply to § 1446(d), which merely requires "prompt notice." *See Littleton v.*

*Am. Bankers Life Ins. Co. of Fl.*, 289 F.Supp.2d 776, 781 (S.D. Miss. 2003) ("[U]nder the federal removal statute, the Notice of Removal must be filed 'promptly' with the state court. The statute does not state that it must be filed in state court within 30 days.") (internal citation omitted). "Prompt notice does not specify a specific time period." *Sommers v. Abshire*, 186 B.R. 407, 409 (E.D. Tex. 1995). However, "the receipt of written notice a few day[s] after the removal satisfies the promptness requirement of … section 1446(d)." *Id*.

There is no dispute the state court received the notice of removal on January 23, 2017, three days after the removal notice was filed in this Court. Doc. #15-2. There is also no dispute that, on the same day, Tubwell was served by mail with the removal notice. Doc. #15-1 at ¶¶ 5–6.[2] Under these circumstances, the Court concludes that the defendants satisfied their duty under § 1446(d) to notify both Tubwell and the state court of the removal.

### III
### Motion for Clerk's Entry of Default

Under Federal Rule of Civil Procedure 81(c)(2):

A defendant who did not answer before removal must answer or present other defenses or objections under these rules within the longest of these periods:

> (A) 21 days after receiving—through service or otherwise—a copy of the initial pleading stating the claim for relief;
>
> (B) 21 days after being served with the summons for an initial pleading on file at the time of service; or
>
> (C) 7 days after the notice of removal is filed.

The defendants filed a motion to dismiss two days after removal. Doc. #7. Accordingly, there was no default. Tubwell's motion for default will be denied.

---

[2] The defendants' attorney avers he mailed the notice of removal to Tubwell on January 23, 2017. Doc. #15-1 at ¶¶ 5–6. In the removal notice, however, the defendants' attorney signed a certificate of service indicating a service date of January 20, 2017. Doc. #1 at 6. Service by mail is "complete upon mailing." Fed. R. Civ. P. 5(b)(2)(C).

8

# IV
## **Motion for Extension**

In his motion for extension, Tubwell seeks "30 additional days" to respond to the motion to dismiss. Doc. #17 at 2. As grounds for the requested extension, Tubwell asserts that "defendants posted the envelope" in which they served their motion to dismiss "on January 25, 20o17 [sic], but never deposited such into the mail until February 1, 2016 [sic], 6 days later." Doc. #17 at 1. Tubwell's motion was served on counsel for the defendants by mail on February 3, 2017. *Id.* at 2.

The defendants filed a response to Tubwell's motion one day late, on February 21, 2017, agreeing to a "reasonable extension of Tubwell's deadline." Doc. #23 at ¶ 4. In their response, the defendants' counsel states that "Defendants" mailed Tubwell the motion to dismiss and supporting memorandum the day it was filed on January 25, 2017, "via U.S. mail to Plaintiff Joe Tubwell at the address he provided on all court pleadings." *Id.* at ¶ 1. However, this assertion is contradicted by an exhibit filed by Tubwell on February 24, 2017, which is a copy of an envelope with Tubwell's mailing address, the return address of the defendants' counsel's firm, a Pitney Bowes postage stamp dated January 25, 2017, and markings appearing to be a postmark dated February 1, 2017—one week later.

Assuming that Tubwell was served by mail with the motion to dismiss on February 1, 2017, Tubwell's response to the motion would have been due February 20, 2017. A thirty-day extension would have extended this deadline to March 22, 2017. Tubwell did not respond to the motion to dismiss on or before March 22, 2017, or at all. Accordingly, the motion for extension may properly be denied as moot. Nevertheless, in light of the issuance date of this order, the Court will extend the deadline fourteen days from the date of this order.

# V
## Motion to Strike

Finally, Tubwell's motion to strike asks the Court to strike the motion to dismiss and "requi[re] that the defendants refile the motion with a copy served upon the plaintiff promptly and timely so that plaintiff will have ample time to reply to such motion in accord with the rules of this court and the law." Doc. #13 at 1–2. With the extension granted above, Tubwell will have received more than three months to respond to the motion to dismiss, far more than the time allotted by the Federal Rules. Accordingly, refiling is unnecessary to afford Tubwell sufficient time to respond. The motion to strike will be denied as moot.

# VI
## Conclusion

For the reasons above:

1. The motion to remand [10] is **DENIED**;

2. The motion for an entry of default by the Clerk of the Court [12] is **DENIED**;

3. The motion to strike [13] is **DENIED as moot**; and

4. The motion for extension [17] is **GRANTED in Part and DENIED in Part**. It is GRANTED to the extent it seeks an extension but DENIED to the extent it seeks an extension of thirty days. Tubwell may respond to the motion to dismiss within fourteen (14) days from the issuance of this order.

**SO ORDERED**, this 11th day of April, 2017.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**