**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**JOE TUBWELL**                                                                                    **PLAINTIFF**

**V.**                                                                              **NO. 3:17-CV-15-DMB-RP**

**SPECIALIZED LOAN SERVICE LLC (SLS),**
**Agents and Successors, Loan No. 1012441108;**
**MORGAN STANLEY MORTGAGE CAPITAL**
**HOLDINGS LLC, Agents and Successors**                                            **DEFENDANTS**


## ORDER

Before the Court are Joe Tubwell's "Motion to Strike Defendant's Statement of Amendment of Allegations of Jurisdiction," Doc. #35; and Morgan Stanley Mortgage Capital Holdings LLC and Specialized Loan Servicing's motion to dismiss, Doc. #7.

### I
### Procedural History

On December 20, 2016, Joe Tubwell filed a "Verified Complaint" in the Circuit Court of DeSoto County, Mississippi, against "Specialized Loan Service LLC (SLS), Agents and Successors, Loan No. 1012441108;" and "Morgan Stanley Mortgage Capital Holdings LLC, Agents and Successors." Doc. #2. In his twelve-count complaint, Tubwell alleges that the defendants collectively own a home refinance loan made to him and Willie L. Chalmer[1] and that, in servicing the loan, the defendants engaged in an array of wrongful conduct, including wrongfully refusing to accept his payments and "attempt[ing] to foreclose upon the property without having provided adequate notice or opportunity to the owner and co-borrower." *Id.* at ¶¶ 13, 17, 23. Tubwell asserts numerous claims, including causes of action brought under the "Fair Debt Collection Act" and the Truth in Lending Act. *Id.* at ¶¶ 35, 48. Tubwell seeks (1)

---

[1] Throughout the complaint, Tubwell uses the surnames "Chalmer" and "Chalmers" interchangeably to refer to this person.

rescission of the loan; (2) $69,515.00 in damages "which defendants caused plaintiff to loose [sic] in failing to acknowledge the plaintiff's status as a co-borrower on the lone [sic] and thereby prevented refinancing under lesser interest rate which has thereby cause [sic] plaintiff to fall behind on payments on home;" (3) injunctive relief; (4) "Actual Damages;" (5) punitive damages; and (6) attorney's fees, costs, and expenses.  *Id*. at ¶ 54.

On January 20, 2017, the defendants, asserting diversity and federal question jurisdiction, removed the action to this Court.  Doc. #1.  Five days later, the defendants filed a motion to dismiss.  Doc. #7.

Tubwell filed a motion to remand on January 26, 2017, arguing the defendants' removal was untimely.  Doc. #10.  On February 1, 2017, Tubwell filed a motion for entry of default.  Doc. #12.  The next day, Tubwell filed "Plaintiff's Supplemental Motion to Remand and Response to Defendants' Notice of Removal Filed in United States District Court"—which the Court construes as a supplement to his remand motion, Doc. #14; and a motion to strike the defendants' motion to dismiss, Doc. #13.  On February 6, 2017, Tubwell filed a motion to extend the deadline to respond to the defendants' motion to dismiss, which this Court granted in part on April 12, 2017.  Doc. #17; Doc. # 28.

The defendants responded in opposition to the motion for entry of default on February 7, 2017, Doc. #18; to the motion to remand on February 2, 2017, Doc. #15; to the supplement to the motion to remand on February 16, 2017, Doc. #21; to the motion to strike on February 16, 2017, Doc. #20; and to the motion for extension on February 21, 2017, Doc. #23.

On April 12, 2017, the Court denied Tubwell's motion to remand.  Doc. #28.  The Court found that it had federal question jurisdiction over the action but, because the defendants failed to allege their citizenships, that it lacked diversity jurisdiction.  *Id*. at 4–7.  The Court allowed the

defendants fourteen days to file a statement of amendment pursuant to 28 U.S.C. § 1653 to adequately allege diversity jurisdiction should they wish to re-assert the existence of diversity jurisdiction. *Id*. at 10. Based on its finding that the removal notice failed to sufficiently allege complete diversity, the Court declined to address the subject of amount in controversy but stated that should the defendants re-assert diversity jurisdiction, the Court would do so then. *Id*. at 7.

On April 26, 2017, the defendants filed a statement amending their allegations of diversity jurisdiction, alleging the citizenship of their members and including additional authority to establish the amount in controversy. Doc. #30. Tubwell moved to strike the statement of amendment on April 28, 2017, to which the defendants responded on May 3, 2017. Doc. #35; Doc. #38.

On April 28, 2017, Tubwell filed a response to the defendants' motion to dismiss and the defendants replied on May 8, 2017. Doc. #37; Doc. #39. On June 2, 2017, the defendants filed an answer and affirmative defenses to Tubwell's complaint. Doc. #41.

## II
## Motion to Strike

Tubwell argues the defendants' statement amending their allegations of diversity jurisdiction should be stricken because it (1) "contains citations of case law in violation of L.U. Civ[.]R. 7(b)(2)," and (2) was untimely filed. Doc. #35 at 1.

In the Court's April 12, 2017, order, the Court allowed the defendants fourteen days to file a statement of amendment to adequately allege diversity jurisdiction. Because the defendants filed their statement fourteen days later on April 26, 2017, the statement was not untimely.[2]

---

[2] Though the Court stated in its April 12 order that it would address the subject of amount in controversy should the defendants re-assert the existence of diversity jurisdiction, in light of its finding of federal question jurisdiction and supplemental jurisdiction over the state law claims, there is no need to do so to establish this Court's authority to

Local Civil Rule 7(b)(2)(B) provides that "a motion may not exceed four pages, excluding exhibits, may contain only the grounds for the request and may not contain legal argument or citations to case law or other secondary authority." The defendants' statement was filed pursuant to 28 U.S.C. § 1653, which states that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." Because the defendants' statement is directed to amending their jurisdictional allegations as permitted by the Court, the statement of amendment is not a motion under the local rules. Tubwell's motion to strike will be denied.

decide the merits of Tubwell's claims. The Court nevertheless acknowledges that the defendants' April 26 submissions establish complete diversity of citizenship and the requisite amount in controversy.

Regarding complete diversity, the citizenship of a limited liability corporation is determined by the citizenship of all its members. *Tewari De-Ox Sys., Inc. v. Mtn. States/Rosen, Ltd. Liab. Corp.*, 757 F.3d 481, 483 (5th Cir. 2014). The "citizenship of an unincorporated association must be traced through each layer of the association, however many there may be." *Deep Marine Tech., Inc. v. Conmaco/Rector, L.P.*, 515 F.Supp.2d 760, 766 (S.D. Tex. 2007). Further, "§ 1332(c)(1), which deems a corporation of 'every State and foreign state' in which it is incorporated and the 'State or foreign state' where it has its principal place of business, applies to alien corporations." *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014). The defendants submitted an upstream analysis of their organizational structure, tracing through each layer of association, to properly allege the citizenship of each member, ultimately establishing that they and Tubwell are citizens of different states.

As to the amount in controversy, in this case where the complaint does not contain a specific damages amount, the defendants argue (1) Tubwell's request for declaratory relief to set aside the deed of trust is valued at $76,000; and (2) Tubwell's request for unliquidated damages and punitive damages satisfies the threshold requirement. Doc. #30 at ¶¶ 11–12, 14. The "amount in controversy, in an action for declaratory or injunctive relief, is the value of the right to be protected or the extent of the injury to be prevented." *State Auto Prop. Cas. Co. v. El Shaddai Christian Ministries, Inc.*, No. 3:15-cv-122, 2017 WL 1225885, *3 (S.D. Miss. Mar. 29, 2017). "In actions enjoining a lender from transferring property and preserving an individual's ownership interest, it is the property itself that is the object of the litigation; the value of that property represents the amount in controversy." *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338, 341 (5th Cir. 2013). To determine the value of the property here, the Court relies on the evidence most relevant to its value at the time of removal. *Davis v. Bank of Am., N.A.*, No. 4:13-cv-00116, 2014 WL 4145551, at *4 (N.D. Miss. Aug. 19, 2014) (citing *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000)). Such evidence here is the December 19, 2016, mortgage statement attached to the complaint showing an outstanding balance of $64,705.49. Because the deed of trust amount on which the defendants rely relates to the property value nearly ten years from the removal date, the value of the right to be protected for Tubwell's request for injunctive relief is $64,705.49.

As to punitive damages, it is well settled that, if Mississippi law permits punitive damages on the particular claims for which the plaintiff seeks redress, they are included in computing the amount in controversy. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). Under Mississippi law, punitive damages may be awarded where the defendant's conduct constitutes "intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an independent tort." *American Funeral Ins. Co. v. Hubbs*, 700 So.2d 283, 286 (Miss. 1997). Moreover, punitive damages are available in Mississippi for a negligence action if the plaintiff proves by clear and convincing evidence "that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. § 11–1–65(1)(a). Because Tubwell alleges "wrongful, intentional, and malicious" conduct by the defendants, Doc. #2 at ¶ 54, punitive damages may be justified. Since any punitive award added to Tubwell's injunctive relief claims, if proven true, would exceed $75,000, the amount in controversy threshold is met on the face of Tubwell's complaint.

The defendants move to dismiss on grounds that Tubwell failed to state a claim for each count pled in his complaint. As a general matter, "[a] pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a complaint falls short of this directive, a defendant may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering the interplay between Rule 8 and Rule 12, the United States Supreme Court has explained:

> To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and punctuation omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–58 (2007)). Under this standard, a "court must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011) (internal quotation marks and punctuation omitted).

### A.   "Count 1 - Gross Negligence"

Tubwell alleges the defendants were grossly negligent in failing to report his loan payments to credit reporting agencies. Doc. #2 at ¶¶ 26–27. The defendants argue Tubwell's gross negligence claim must fail because (1) his claim is preempted by the Fair Credit Reporting Act ("FCRA") for failure to allege the defendants reported him delinquent with malice or willful

intent to injure him; (2) his allegations are too vague and conclusory to state a claim; and (3) his negligence claim should be rejected because his breach of contract claims stem from the same alleged conduct. Doc. #8 at 5.

### 1. Preemption

"Federal preemption is an affirmative defense that a defendant must plead and prove." *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012) (citing *Met. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (other citations omitted)). "Unless the complaint itself establishes the applicability of a federal-preemption defense—in which case the issue may properly be the subject of a Rule 12(b)(6) motion—a defendant should ordinarily raise preemption in a Rule 12(c) motion for judgment on the pleadings or a Rule 56 motion for summary judgment." *Id.* (internal citation omitted).

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, (2007). "The FCRA preempts state law ... negligent reporting claims unless the plaintiff consumer proves '*malice or willful intent to injure*' him." *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 638 (5th Cir. 2002) (citing 15 U.S.C. § 1681h(e) (emphasis added)); *see Morris v. Equifax Info. Servs., LLC*, 457 F.3d 460, 471 (5th Cir. 2006) (referencing "the 'malice' exception to preemption under section 1681h(e)"). Therefore, for Tubwell's gross negligence claim to survive, he must have pled that the defendants acted with malice or willful intent to injure him in their failure to report his payments to the credit bureau.

### 2. Allegations of malice and willful intent to injure

Because "the FCRA does not define malice," the Fifth Circuit has "applied the common-law standard," which requires the plaintiff to show that the defendant "published the false

statements about [him] knowing the statements were false or with reckless disregard of whether they were false." *Morris*, 457 F.3d at 471 (citing *Cousin v. Trans Union Corp.*, 246 F.3d 359, 375 (5th Cir. 2001)).  Reckless disregard means that "the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Accordingly, "[n]egligence, lack of investigation, or failure to act as a reasonably prudent person are insufficient to show actual malice." *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 313 (5th Cir. 1995) (citation omitted).  Lastly, "[t]he term 'willful' in [the FCRA] context has been interpreted to require that a defendant knowingly and intentionally commit an act in conscious disregard to the rights of others." *Rivera v. Countrywide Fin. Corp.*, No. 1:04-cv-103, 2006 WL 2431391, at *4 (S.D. Miss. Aug. 21, 2006) (citation omitted).

Tubwell alleges that the defendants knew he and Chalmer jointly entered into the loan and that Tubwell made all loan payments but that the defendants "intentionally and negligently failed to report such actions to the credit bureau which negligence caused plaintiff harm [and] disqualified him from securing refinancing and a lower interest rate."  Doc. #2 at ¶ 27.  In his plea for damages, Tubwell alleges the defendants' actions were "wrongful, intentional and malicious."  *Id.* at ¶ 54.  Based on these allegations, Tubwell has sufficiently alleged specific facts to support an inference that the defendants acted with malice.  Because Tubwell alleges the defendants knew he made all loan payments, any reporting that Tubwell was not making payments implies the defendants knew the reporting was false.  Construing the complaint liberally and taking Tubwell's allegations as true, Tubwell's gross negligence claim is sufficiently pled and not preempted.

### 3. Same conduct as breach of contract claims

"[T]he breach of a contract (whether described as 'negligent' or not) is not actionable in

tort under an ordinary negligence theory unless breaching the contract also breached a duty of care recognized by tort law. There must be a duty of care 'fixed by law and independent of the contract.'" *Clausell v. Bourque*, 158 So.3d 384, 391 (Miss. Ct. App. 2015) (en banc) (quoting *Hazell Mach. Co. v. Shahan*, 161 So.2d 618, 624 (Miss. 1964)).

A review of Tubwell's contract claims leads the Court to conclude that his gross negligence allegations are not founded on his breach of contract claims. Tubwell's negligence claim is based on the defendants' independent duty under the FCRA to accurately report his loan payments to credit reporting agencies; thus, the defendants' duty is fixed by law and independent of any contract. Accordingly, the defendants' motion to dismiss will be denied as to Tubwell's gross negligence claim in Count 1.

### B. "Count 2 - Fraud and Misrepresentation"

As grounds for the dismissal of Tubwell's "fraud and misrepresentation" count, the defendants argue Tubwell has failed to plead such claims with particularly as required by Federal Rule of Civil Procedure 9(b). Specifically, the defendants argue Tubwell has not alleged a misrepresentation by SLS or Morgan Stanley, the individual responsible for the misrepresentation, and when or where the misrepresentation was made. Doc. #8 at 5–6.

Tubwell does not specify whether Count 2 includes a claim for negligent misrepresentation or whether his misrepresentation claim is the same as his fraud claim. He simply "re-asserts" each preceding paragraph of the complaint, adding that the defendants' actions constitute a misrepresentation. Doc. #2 at ¶ 30. Whether negligent and/or fraudulent misrepresentation is alleged, Tubwell's Count 2 claims fail.

### 1. Fraud

The elements of a fraudulent or intentional misrepresentation claim are: "(1) a

representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury." *Poppelreiter v. GMAC Mortgage, LLC*, No. 1:11-cv-008, 2011 WL 2690165, at *4 (N.D. Miss. July 11, 2011) (citation omitted). Under Rule 9(b) of the Federal Rules of Civil Procedure, "[i]n alleging fraud ..., a party must state with particularity the circumstances constituting fraud .... Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not." *Lone Star Ladies Inv. Club v. Scholtzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). "What constitutes 'particularity' will necessarily differ with the facts of each case. At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (internal punctuation and citations omitted).

In the allegations preceding Count 2, Tubwell alleges that he contacted another mortgage company to refinance the property and that the defendants incorrectly advised those mortgage companies that he was not a party to the loan and not qualified to secure refinancing. Doc. #2 at ¶¶15–16. Tubwell alleges these statements resulted in him not being able to secure a loan with a lower interest rate. *Id*. at ¶ 16. These allegations are devoid of any facts about the who, when, where, and how. Accordingly, the defendants' motion to dismiss Tubwell's claim for fraud (and any claimed intentional misrepresentation) will be granted.

## 2.   Negligent misrepresentation

The elements of negligent misrepresentation are:  "(1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance."[3]  *Holland v. Peoples Bank & Trust Co.*, 3 So.3d 94, 101 (Miss. 2008) (quoting *Horace Mann Life Ins. Co. v. Nunaley*, 960 So.2d 455, 461 (Miss. 2007)).  The Fifth Circuit applies "the heightened pleading requirements [of Rule 9(b)] when the parties have not urged a separate focus on the negligent misrepresentation claims such as when fraud and negligent misrepresentation claims are based on the same set of alleged facts."  *Lone Star Fund V (U.S.) LP v. Barclays Bank PLC*, 594 F.3d 383, 387 n.3 (5th Cir. 2010) (internal quotation marks omitted).

Because any claim for negligent misrepresentation by Tubwell would be based on the same allegations as his Count 2 fraud claim, any negligent misrepresentation claim must also fail.

## C.   Counts 3, 4, and 8 - Breach of Contract

Counts 3, 4, and 8 of Tubwell's complaint allege various breach of contract claims.  The defendants argue that Tubwell fails to state a claim for breach of contract because he "does not attach a copy of the purportedly breached agreement to his Complaint, specify terms that were violated, or identify which Defendant violated which term."  Doc. #8 at 6.  Additionally, the defendants argue that because Tubwell admits that he has never been recognized as a party to the

---

[3] "Negligent misrepresentation differs from fraudulent misrepresentation only in that the defendant-speaker need not know the statement was false if he failed to exercise reasonable care in making the statement."  *Crockett v. Citifinancial, Inc.*, 192 F.Supp.2d 648, 653 (N.D. Miss. 2002).

loan agreement, Tubwell has not established he is a party to the loan agreement.

To show a breach of contract, a plaintiff has the burden to prove, "by a preponderance of the evidence: 1. the existence of a valid and binding contract; and 2. that the defendant has broken, or breached it …." *Bus. Commc'ns, Inc. v. Banks*, 90 So.3d 1221, 1224 (Miss. 2012) (rejecting actual damages as an element of a breach of contract claim).

In the caption of his complaint, Tubwell identifies the loan as "Loan No. 1012441108." Doc. #2 at 1. He alleges the loan was entered into to "refinance[] a home at 8229 Ashbrook Drive … on January 11, 2005" and was executed by "First Choice Mortgage LLC." *Id*. at ¶ 9. Tubwell further alleges that he was a party to the original loan bought by the defendants; and that the defendants have inserted requirements for late fees, insurance fees, escrow requirements, and have failed to provide Tubwell "with credits for note paid over the life of the loa[n]." *Id*. at ¶¶ 13, 17, 21. Based on these allegations, Tubwell has sufficiently pled a breach of contract claim—the existence of a binding agreement[4] breached by the defendants.

## D.   "Count 5 – Violation of Fair Debt Collection Practices Act"

Tubwell claims the defendants violated the "fair debt collection act." The defendants argue that Tubwell failed to state a claim under the Fair Debt Collection Practices Act ("FDCPA") because he has not alleged facts to establish each element for a FDCPA claim.

The FDCPA provides, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C.A. § 1692e. "The statute then lists several activities which violate the FDCPA." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009); *see* 15 U.S.C.A. § 1692e(1)-(16). "To state a claim under the FDCPA, Plaintiff must show (1) that he was the object of collection activity arising from a consumer debt;

---

[4] Though Tubwell did not attach to his complaint a copy of the contract upon which his breach of contract claims exist, the defendants have not identified any rule or other authority applicable in this federal court requiring him to do so.

(2) that Defendant is a debt collector as defined by the FDCPA; and (3) that Defendant engaged in an act or omission prohibited by the FDCPA." *Askew v. Crown Mgmt., LLC*, No. 1:16-cv-129, 2017 WL 1534396, at *3 (N.D. Miss. Apr. 27, 2017).

### 1. Object of collection activity arising from consumer debt

The defendants argue Tubwell has failed to "allege that he is the object of collection activity" because the "Defendants are <u>not</u> communicating with him about the subject debt." Doc. #8 at 3.

Tubwell has not alleged any facts regarding this claim; instead, he "re-asserts" the previous paragraphs of the complaint. As explained above, Tubwell alleges in preceding paragraphs that the defendants failed to report his payments to the credit bureau, disqualifying him from refinancing the loan at a lower rate. Even assuming that reporting a debt to a credit agency can be an activity "in connection with the collection of [a] debt," Tubwell has not plausibly alleged that the defendants' reporting activity in this case was in connection with collection of a debt. Nor does Tubwell allege that he received a demand letter or any other communication from the defendants, or any other facts which would suggest the defendants reported the debt as a means to collect on the debt.[5] Accordingly, Tubwell has not plausibly alleged that the purpose of the defendants' credit reporting was to induce him to pay his debts. *See Billups v. Retail Merchants Ass'n, Inc*., 620 F. App'x 211, 213–14 (5th Cir. 2015) (reporting of debt to credit agency, without more, insufficient to allege lenders' activity was in connection with debt).

The remaining allegations reasserted with regard to Count 5, which relate to foreclosure efforts, do not support an inference that the defendants' actions were efforts to collect a debt.

---

[5] Attached to the complaint are letters from attorneys which are merely efforts to foreclose on a mortgage and do not constitute debt collecting under the FDCPA. *Fouche' v. Shapiro & Massey L.L.P*., 575 F.Supp.2d 776, 787 (S.D. Miss. 2008) (correspondence from attorney solely for purpose of foreclosure and not for debt collecting).

Efforts to foreclose on a mortgage do not constitute debt collecting under the FDCPA. *Fouche'*, 575 F.Supp.2d at 785. Tubwell claims that, in refusing to speak with him or accept his payments and recognize him as a borrower, the defendants were "engaged in a concerted campaign and attempt to foreclose upon the property without having provided adequate notice or opportunity to the owner and co-borrower," and that the defendants took over the loan for the "sole purpose to take advantage of plaintiff's hardship and inability to keep the payments current and to foreclose upon the property as a means to take the homes of the less fortunate struggling to maintain their home." Doc. #2 at ¶¶ 13, 20, 22, 23. Similarly, Tubwell alleges that when he was current on the loan, the defendants communicated to potential lenders seeking to assist him in refinancing his home that "Tubwell was not a party to the loan and therefore was not qualified to secure the refinancing," in an effort "to prevent plaintiff from obtaining refinancing." *Id.* at ¶¶ 15–16. While the FDCPA prohibits communicating knowingly false information as a means to attempt to collect a debt, Tubwell has not alleged the defendants' false statements to lenders were an attempt to collect a debt but rather an effort to prevent him from paying off the debt so the lenders can foreclose.

Finally, Tubwell alleges the defendants have altered and manipulated the contract by inserting requirements for late fees, insurance expense fees, escrow requirements, and additional interest. Section 1692f prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1); *see Laali v. IndyMac Mortg. Servs.*, No. 4:12-cv-432, 2013 WL 4456680, at *12 (E.D. Tex. Aug. 16, 2013). The Court can infer from Tubwell's allegations that the defendants' attempts to collect interest and other fees were not authorized under the agreement; however, Tubwell has not

alleged such actions were in connection with collecting on a debt. Tubwell alleges only that the defendants acted to their "benefit and to disadvantage plaintiff." Doc. #2 at ¶ 34.

In short, Tubwell has not pled plausible facts to show that he is the object of collection activity arising from a consumer debt.

### 2. Debt collectors

The defendants also argue Tubwell has not pled facts to establish the defendants are debt collectors. Under the FDCPA, a debt collector is defined as "any person … who regularly collects or attempts to collect … debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Tubwell alleges the defendants purchased the home loan from First Choice Mortgage LLC. Doc. #2 at ¶ 9. Neither a mortgage servicing company nor a lender is considered a "debt collector" as long as the debt was not in default at the time it was assigned. *Kareem v. Am. Home Mortg. Servicing, Inc.*, No. 3:10-cv-762, 2011 WL 1869419, at *2 (N.D. Tex. Apr. 12, 2011), *adopted by* 2011 WL 1868413 (N.D. Tex. May 13, 2011), *aff'd*, 479 F. App'x 619 (5th Cir. 2012); *Williams v. Countrywide Home Loans, Inc.*, 504 F.Supp.2d 176, 190 (S.D. Tex. 2007), *aff'd*, 269 F. App'x 523 (5th Cir. 2008). Tubwell's complaint does not specify whether he was in default when the deed of trust was bought by the defendants. Thus, even taking Tubwell's allegations as true, the Court cannot infer that the defendants are debt collectors under the FDCPA.[6]

### 3. Act or omission prohibited by FDCPA

As stated above, inaccurate reporting and communicating knowingly false credit

---

[6] In response to the defendant's arguments on his FDCPA claim, Tubwell states that he "fell behind [on] one payment upon his loan which resulted in defendants, a collection agency, to seek to purchase the loan as a means to secure the property and become more financially wealthier…[u]pon having acquired plaintiffs loan as a collection agency…." Doc. #36 at 2. Had this argument been alleged in the complaint, it would support a claim that the defendants are debt collectors.

information in connection with the collection of a debt is prohibited by § 1692e.  While Tubwell has alleged several violations of the FDCPA, he, as explained above, has failed to allege the defendants actions were taken in an effort to collect on a debt.

Due to the deficiencies in Tubwell's allegations described above, the defendants' motion to dismiss will be granted on the FDCPA claim.

### E.   "Count [6] - Loan Gouging"[7]

For his loan gouging claim, Tubwell realleges the preceding paragraphs in his complaint without alleging additional facts.  Doc. #2 at ¶¶ 37–38.  The defendants argue this claim is not recognized by law.  The Court agrees that "loan gouging" is not a separately recognized cause of action.  Accordingly, the defendants' motion to dismiss will be granted as to this claim.

### F.   "Count 7 - Entitlement to Damages"

The defendants argue Tubwell's "entitlement to damages" claim is not recognized by law. Construing Tubwell's allegations liberally, the Court finds their substance sounds in claims for breach of the duty of good faith and fair dealing and wrongful foreclosure.

### 1.  Good faith and fair dealing

"Under Mississippi law, every contract contains an implied covenant of good faith and fair dealing."  *Stewart v. GMAC Mortg., LLC*, No. 2:10-cv-00149, 2011 WL 1296887, at *5 (S.D. Miss. Mar. 31, 2011) (quoting *Merchants & Planters Bank of Raymond v. Williamson*, 691 So.2d 398, 405 (Miss. 1997)) (internal quotation  marks omitted).  Good faith and fair dealing requires the "faithfulness of an agreed purpose between two parties, a purpose which is consistent with the justified expectations of the other party."  *Cenac v. Murry*, 609 So.2d 1257, 1272 (Miss. 1992).  "Bad faith is characterized by some conduct which violates standards of decency,

---

[7] Tubwell's complaint refers to loan gouging as Count 10 but chronologically, this count should be Count 6. Because Tubwell alleges another Count 10 in his complaint, the Court refers to the loan gouging claim as Count 6.

fairness, or reasonableness." *Stewart*, 2011 WL 1296887, at *5 (quoting *Williamson*, 691 So.2d at 404).

Numerous Mississippi state and federal courts "have refused to find a breach of the duty of good faith and fair dealing in ordinary lender/borrower disputes." *Id*. at *6; *see Mann v. Am. Federated Life Ins. Co.*, No. 97-60810, 146 F.3d 868, at *3 (5th Cir. June 2,1998) (lenders' refusal to accept deed to personal residence in lieu of foreclosure on apartment building was "reasonable, and not uncommon") (unpublished opinion); *Gen. Motors Acceptance Corp. v. Baymon*, 732 So.2d 262, 269 (Miss. 1999) (lender's threats to repossess car and decision to charge insurance to borrower on vehicle was "duly authorized by the contract"); *McDaniel v. Citizens Bank*, 937 So.2d 26, 29 (Miss. Ct. App. 2006) (lender's repossession of vehicle after borrower failed to make loan payments was "within reasonable business practices"). However, a lender's misrepresentations of its intention to foreclose on a property may state a claim for breach of the duty of good faith and fair dealing. *See Stewart,* 2011 WL 1296887, at *5–6 (refusing to dismiss claim when lender promised buyer it would review short sale proposals but instead attempted to foreclose and failed to respond to borrower's short sale requests).

Tubwell "re-asserts paragraphs 1-38" in which he alleges the defendants refused to recognize his payments and added additional fees to the mortgage to cause him to get behind on the payments. Tubwell additionally alleges the defendants interfered with or prevented his ability to refinance and to pay off the mortgage loan held by them, which allowed them the opportunity to foreclose on the property. Doc. # 2 at ¶ 40. Construing all inferences in Tubwell's favor, if the defendants acquired the mortgage to intentionally mismanage the payments and thwart Tubwell's ability to stay current or refinance the loan to guarantee foreclosure, such could constitute a breach of the duty of good faith and fair dealing. Tubwell

thus has alleged conduct by the defendants lacking faithfulness and fairness beyond that of an "ordinary" lender/borrower dispute, such that he has stated a claim for breach of the duty of good faith and fair dealing. *See Stewart*, 2011 WL 1296887, at *5–6.

### 2. Wrongful foreclosure

"Mississippi recognizes a claim for wrongful foreclosure where 'an unlawful foreclosure is attempted solely from a malicious desire to injure the mortgagor; or … where the foreclosure is conducted negligently or in bad faith, to his detriment.'" *Stewart*, 2011 WL 1296887, at *11 (quoting *Nat'l Mortg. Co. v. Williams*, 357 So.2d 934, 935–36 (Miss. 1978)). Tubwell's complaint refers to the defendants' attempt to improperly foreclose on the property only in conclusory terms. He does not allege any facts to support a plausible conclusion that the alleged foreclosure attempt was "unlawful, motivated by bad faith, or conducted negligently." *Wentzell v. JPMorgan Chase Bank, Nat. Ass'n*, 627 F. App'x 314, 318 (5th Cir. 2015). Tubwell's allegations thus do not support a claim for wrongful foreclosure. Accordingly, Count 7 will be dismissed to the extent Tubwell asserts a claim for wrongful foreclosure but not to the extent it asserts a claim for breach of the duty of good faith and fair dealing.

### G. "Count 9 - Unlawful Discrimination"

Tubwell's "unlawful discrimination" claim charges that the defendants discriminated against him because of "race, poverty, age, income, and the inability to pay on a constant and instant basis." Doc. #2 at ¶ 44. The defendants argue Tubwell has failed to state a claim because he cites no civil rights statute violated by the defendants and has not identified others treated more favorably on account of race, poverty, or age. Construing Tubwell's allegations liberally, their substance sounds in a claim for violation of the Equal Credit Opportunity Act ("ECOA").

The ECOA, 15 U.S.C. § 1691 *et seq.*, was enacted, in relevant part, to "promote the

availability of credit to all creditworthy applicants without regard to … the fact that all or part of the applicant's income derives from a public assistance program." 12 C.F.R. § 202.1. The ECOA specifically makes it illegal "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction … because all or part of the applicant's income derives from any public assistance program." 15 U.S.C. § 1691(a)(2). "To state a claim for relief under the ECOA, the plaintiff must plausibly show that he was discriminated against in violation of the statute. More specifically, the complaint must plausibly allege that (1) each plaintiff was an 'applicant'; (2) the defendant was a 'creditor'; and (3) the defendant discriminated against the plaintiff with respect to any aspect of a credit transaction on the basis of the plaintiff's membership in a protected class." *Alexander v. AmeriPro Funding, Inc*., 848 F.3d 698, 705–06 (5th Cir. 2017) (citing 15 U.S.C. §§ 1691(a), 1691a(b), 1691a(e), 1691e(a)). "[T]he ECOA does not prohibit discrimination with respect to mortgages purchased on the secondary market; the Act only applies to originating lenders in the primary market." *Id*. at 706.

Tubwell does not allege that he was an "applicant" or that the defendants were "creditors" with respect to the loans or credit allegedly denied; rather, he alleges the defendants interfered with his ability to obtain a loan from other creditors. Additionally, Tubwell alleges the defendants purchased his mortgage on a secondary market, which is distinct from acting as an originating lender. *See id*. Accordingly, accepting Tubwell's allegations as true, the Court cannot conclude he has pled a plausible claim for discrimination under the ECOA. The defendants' motion as to Count 9 will be granted.

### H.  "Count 10 - Negligence in Failing To Maintain Accountability"

In Count 10, Tubwell "re-asserts paragraphs 1–44 as if fully copied herein" and alleges that the defendant's "actions constitute negligence in maintaining accountability of the death

records regarding individuals in which [sic] maintain loans with such defendants and that the defendants should not profit or take advantage of their own shortcomings." Doc. #2 at ¶¶ 45–46. In the allegations preceding Count 10, Tubwell alleges the following with regard to the maintenance of death records:

> That on August 20, 2016, Willie L. Chalmers deceased without any estate or last will being created. Defendants were duly notified of such matter by way of an agent which defendants sent to the property introducing them self as an independent banker.

> That prior to having deceased, Willie L. Chalmers did execute and file a quit claim deed with the Office of the Chancery Court Clerk of DeSoto County, Mississippi quitclaiming all interest in the home at 8229 Ashbrook Drive, Southaven, Mississippi 38671, to the co-borrower, Joe Tubwell. Such home is now fully owned by Joe Tubwell. in accordance with law.

> That the defendants have refused to recognize and continues to ignore the fact that Joe Tubwell is a borrower on the loan regarding the loan regarding property located at 8229 Ashbrook Drive, Southaven, MS 38671.

> Where records demonstrates defendants having failed to provide Joe Tubwell with credits for notes paid over the life of the loa[n] and where deed of trust identifies both parties as borrowers as Willie Chalmers and Joe Tubwell as the borrowers, defendants now have no valid deed of trust and, in fact, have only an unsecured note from a deceased Willie L. Chalmers.

> After having been advised of the death of Willie L. Chalmers, per information provided personally by plaintiff to defendant's independent banker agent as well as per phone conversations to the defendants, <u>Defendants have engaged in a practice to ignore such information and continue to send mail to the property address which is always addressed to the deceased Willie L. Chalmers.</u>

> That the defendants have refused to speak with nor accept any payments from Joe Tubwell, the co-borrower, and is now engaged in a concerted campaign and attempt to foreclose upon the property without having provided adequate notice and opportunity to the owner and co-borrower.

Doc. #2 at ¶¶ 18–23 (paragraph numbering omitted).

The defendants argue Tubwell's claim in Count 10 is not recognized by law. To prevail in any type of negligence action, a plaintiff must show "(1) the existence of a duty to conform to

a specific standard for the protection of others against the unreasonable risk of injury; (2) a breach of that duty; (3) causal relationship between the breach and alleged injury; and (4) injury or damages." *Laurel Yamaha, Inc. v. Freeman*, 956 So.2d 897, 904 (Miss. 2007) (citations and quotation marks omitted). "Whether a duty exists in a negligence case is a question of law to be determined by the Court." *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 244 (5th Cir. 2012). Though unclear, Tubwell appears to allege that his status as a co-borrower, and as the sole borrower following Chalmer's death, has been ignored by the defendants due to their failure to acknowledge records of Chalmer's death and the quitclaim deed Chalmer provided to Tubwell before his death, of which the defendants were aware.

Generally, "the breach of a contract (whether described as 'negligent' or not) is not actionable in tort under an ordinary negligence theory unless breaching the contract also breached a duty of care recognized by tort law. There must be a duty of care 'fixed by law and independent of the contract.'" *Clausell v. Bourque*, 158 So.3d 384, 391 (Miss. Ct. App. 2015) (en banc) (quoting *Hazell Mach. Co. v. Shahan*, 161 So.2d 618, 623 (1964)). Under Mississippi law, "[a] contract creates a reasonable duty of care in fulfilling one's contractual obligations." *River Prod. Co., Inc. v. Baker Hughes Prod. Tools, Inc*., 98 F.3d 857, 859 (5th Cir. 1996) (citing *McKinnon v. Batte*, 485 So.2d 295, 298 (Miss. 1986)). And, under Mississippi law, mortgagees and mortgagors "are in a relationship of trust, and [a] mortgagee should not be allowed to abuse that relationship …." *First Am. Nat. Bank of Iuka v. Mitchell*, 359 So.2d 1376, 1380 (Miss. 1978), *overruled on other grounds by C & C Trucking Co. v. Smith*, 612 So.2d 1092 (Miss. 1992). Mortgagees "at least" owe their mortgagors a "duty of fairness." *Id*. Thus, a lender has a tort duty to apply due care in performing its obligations under a loan contract. *See Montgomery v. CitiMortgage, Inc.*, 955 F.Supp.2d 640, 650 (S.D. Miss. 2013) ("Given the nature of the

parties' relationship, the Court finds that CitiMortgage owed the Plaintiffs a legally enforceable duty, which encompassed the obligation to apply their mortgage payments to the loan in accordance with the terms of the Deed of Trust.").

Viewing the complaint in the light most favorable to Tubwell, the Court finds, though a close call, that Tubwell has alleged a plausible, although rambling, negligence claim that the defendants had a duty to keep accurate records of mortgagors and that the defendants breached this duty.  The defendants' motion to dismiss will be denied as to Count 10.

## I.    Counts 11 and 12 - TILA Claims

Tubwell brings Counts 11 and 12 under the Truth in Lending Act ("TILA").  In Count 11, he seeks "to enforce [his] right to rescind a consumer transaction, to void the claimed security interest in plaintiff's home by the defendants, and to recover statutory damages, reasonable attorney fees and costs by reason of defendants violation of the TILA and Regulation Z …." Doc. #2 at ¶ 48.  In Count 12, Tubwell alleges that the defendants, "on the date in which they entered into loan, failed to comply with making sure [he] met the minimum standard for residential loans as it relates to the ability to repay in violation of 15 USCS 1693(a)."  *Id*. at ¶ 50. He further claims the defendants "breached their duty as fiduciaries and acted in their own self-interest to attempt to take the property of the plaintiff by increasing the loan with in-applicable fees and costs to increase the sum which would bring the loan current so as to create grounds to foreclose or threaten foreclosure."  *Id*. at ¶ 52.  The defendants argue Tubwell's TILA claims fail because Tubwell has not identified any required disclosure the defendants failed to make, and his demand for rescission is time-barred.

TILA "has the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers."  *Ford Motor Credit Co. v. Milhollin,* 444

U.S. 555, 559–60, (1980) (citing 15 U.S.C. § 1601). "The statute requires creditors to disclose the terms and conditions of the loan to borrowers, including the amount financed, the finance charges, the number of payments scheduled to repay the loan, and the borrower's right to rescind the loan." *Maxwell v. Chase Home Fin. LLC*, No. H-09-4038, 2011 WL 181345, at *3 (S.D. Tex. Jan. 19, 2011) (citing 15 U.S.C. §§ 1635(a), 1638(a)).

## 1.  Rescission

In certain consumer credit transactions, TILA requires disclosure of the consumer's right to rescind up to three business days following consummation of the transaction, delivery of a notice of right to rescind, or delivery of all material disclosures, whichever occurs last. 15 U.S.C. § 1635(a); 12 C.F.R. §§ 226.23(a)(3), (b). If notice of the right to rescind and certain material disclosures are not timely made, the right to rescind expires three years after consummation of the transaction. 15 U.S.C. § 1635(f); 12 C.F.R. §§ 226.23(a)(3). TILA violations are otherwise subject to a one-year statute of limitations. 15 U.S.C. § 1640(e). If an obligor exercises his right to rescind, the security interest given by the obligor is void, and the creditor must return any money or property given as earnest money or downpayment and take any necessary action to reflect the termination of the security interest. 15 U.S.C. § 1635(b). Once the creditor performs its obligations, the obligor is required to tender the property to the creditor, or tender its reasonable value. *Id.*

Generally, there is no right of rescission with respect to "residential mortgage transactions." 15 U.S.C. § 1635(e)(1); 12 C.F.R. § 226.23(f)(1); *see Perkins v. Central Mortg. Co.,* 422 F.Supp.2d 487, 489 (E.D. Pa. 2006). A "residential mortgage transaction means a transaction in which a mortgage ... is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(w).

Similarly, there is no right to rescind with respect to a "refinancing" by the same creditor. 15 U.S.C. § 1635(e)(2); 12 C.F.R. § 226.23(f)(2).

"A right to rescind may be available with respect to a refinancing of a residential mortgage by a *different* creditor or with respect to a variable-rate adjustment to a residential mortgage." *Castrillo v. Am. Home Mortg. Servicing, Inc.*, 670 F.Supp.2d 516, 527 (E.D. La. 2009) (citing 12 C.F.R. § 226.23(f)(2)). For a refinancing with a different creditor to give rise to a right of rescission, however, the existing obligation must be "satisfied and replaced by a new obligation." 12 C.F.R. § 226.20(a). "The new obligation must completely replace the prior one." *Castrillo*, 670 F.Supp.2d at 527. "Thus, mere changes to the terms of an existing obligation do not give rise to a right of rescission unless accomplished by the cancellation of that obligation and the substitution of a new obligation." *Id.* at 527–28; *see Sheppard v. GMAC Mortg. Corp.,* 299 B.R. 753, 762 (E.D. Pa. 2003) (collecting authorities that mere loan modification does not constitute refinancing). "The addition of a variable rate feature to an existing obligation may constitute a new transaction giving rise to a new right of rescission." *Castrillo*, 670 F.Supp.2d at 528.

In this case, Tubwell and Chalmer refinanced a loan with First Choice Mortgage LLC on January 11, 2005. Doc. #2 at ¶ 9. As a preliminary matter, the Court finds that Tubwell failed to timely rescind his January 2005 mortgage. *See* 15 U.S.C. § 1635(f) (requiring exercise of rescission within three years).

Tubwell does not allege that his loan with the defendants is subject to TILA's rescission provisions. While he alleges that during the course of repayment of the loan, "the loan was purchased by the defendants," Doc. #2 at ¶ 13, he has not alleged that the loan with the defendants "satisfies" and "completely replaces" the 2005 mortgage. Thus, as alleged, the

defendants' purchasing of the loan is a mere modification of an existing debt and not a "refinancing" by a different creditor. It therefore does not give rise to disclosure requirements or rescission rights under TILA. Accordingly, the defendants' motion to dismiss Tubwell's Count 11 TILA rescission claims will be granted.

## 2. "15 USCA 1693(a)"

15 U.S.C. §1693(a) contains definitions to be used under "Subchapter VI. Electronic Funds Transfers." Accordingly, no cause of action exists under §1693(a). Moreover, Tubwell's allegations in Count 12 are irrelevant to conduct regulated by TILA. Accordingly, the defendants' motion to dismiss will be granted as to Count 12.

## J. Summary and Leave to Amend

In sum, Tubwell's claims for "fraud and misrepresentation" in Count 2, violation of FDCPA in Count 5, loan gouging in Count 6, unlawful discrimination in Count 9, and TILA violations in Counts 11 and 12, will be dismissed for failure to state a claim. Tubwell's "entitlement to damages" claim in Count 7 will also be dismissed in part to the extent it asserts a claim for wrongful foreclosure. Tubwell's claims for gross negligence in Count 1; breach of contract in Counts 3, 4, and 8; negligence in Count 10; and "entitlement to damages" in Count 7, to the extent it asserts a claim for breach of good faith and fair dealing, will be allowed to proceed.

Tubwell seeks leave to amend any of his claims that are subject to dismissal. Doc. #36 at 5. When a court finds that a motion to dismiss should be granted on the basis of a failure to comply with Rule 8, it is generally appropriate to provide the plaintiff an opportunity to remedy the pleading deficiencies through the filing of an amended complaint. *See Gordon v. Green*, 602 F.2d 743, 745 (5th Cir. 1979) ("We think the Trial Court should have dismissed the complaints

with leave to amend."); *see also Atascocita Realty Inc. v. Western Heritage Ins. Co.,* No. H–10–4519, 2012 WL 423395, at *1 (S.D. Tex. Feb. 8, 2012) ("The Court grants Plaintiff leave to amend its original petition so as to comply with the standards of Rules 8 and 9(b)."). The Court concludes that such relief is warranted here such that the claims to be dismissed will be dismissed without prejudice.

**IV**
**Conclusion**

For the reasons above:

1. Tubwell's motion to strike [35] is **DENIED**.

2. The defendants' motion to dismiss [7] is **GRANTED in Part and DENIED in Part**. Counts 2, 5, 6, 9, 11, and 12, and Count 7, to the extent it asserts a claim for wrongful foreclosure, are **DISMISSED without prejudice**. The motion is denied as to Counts 1, 3, 4, 8, and 10, and to the extent Count 7 asserts a claim for breach of good faith and fair dealing.

3. Tubwell may file an amended complaint within fourteen (14) days from the filing of this order.

**SO ORDERED**, this 22nd day of September, 2017.

/s/Debra M. Brown_____
**UNITED STATES DISTRICT JUDGE**