**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

JOE CLYDE TUBWELL                                                                                       PLAINTIFF

V.                                                                                         NO. 3:17-CV-15-DMB-RP

SPECIALIZED LOAN
SERVICE, LLC, et al.                                                                              DEFENDANTS

**ORDER**

Before the Court is the motion for summary judgment filed by Morgan Stanley Mortgage Capital Holdings LLC and Specialized Loan Servicing, LLC. Doc. #108.

**I**
**Summary Judgment Standard**

Under Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is proper only if the pleadings and record materials reveal no genuine issue as to any material fact." *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018). "A material fact is one that might affect the outcome of the suit under governing law, and a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. (internal quotation marks and citations omitted). In making these determinations, a court "must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in the non-movant's favor." *Id*. (internal quotation marks and alterations omitted). "The party moving for summary judgment bears the burden of identifying the portions of the record that demonstrate the absence of a genuine issue of material fact, and the nonmovant must then point to or produce specific facts demonstrating that there is a genuine issue of material fact." *James v. Woods*, 899 F.3d 404, 407 (5th Cir. 2018) (internal quotation marks and alterations omitted). "Where the nonmoving party bears the burden of proof at trial, the moving party satisfies this initial burden by

demonstrating an absence of evidence to support the nonmoving party's case." *Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014).

## II
## Background and Procedural History

In March 2003, for the purpose of buying a home, Joe Clyde Tubwell asked Willie L. Chalmers to apply for a preapproved loan because he had been previously denied a home loan. Doc. #108-1 at 23, 155–56. Tubwell and Chalmers agreed that only Chalmers would be a party to the loan documents, but Tubwell would be responsible for the loan payments, insurance, and other costs associated with the home. *Id*. at 23, 157. On or about March 24, 2003, Chalmers purchased a home in Southaven, Mississippi, with a loan from National City Mortgage Company. Doc. #108-2. Over the course of the next fourteen or so years, Tubwell exclusively made the loan payments and lived in the home with his wife.[1] Doc. #108-1 at 14, 17–18.

On January 11, 2005, Chalmers executed the application documents required to refinance the loan with First Choice Mortgage Services, LLC. Doc. #108-5. To Tubwell's understanding, from communications with First Choice, the refinanced loan transferred the loan and property from Chalmers to him. Doc. #108-1 at 20. However, in the final loan documents, only Chalmers signed the promissory note, and both Chalmers and Tubwell signed the deed of trust. Doc. #108-7 at 4;[2] Doc. #108-8 at 28–29.

---

[1] Chalmers only lived in the home for a total of approximately thirty to forty-five days. Doc. #108-1 at 17.

[2] Although Tubwell did not sign the actual note, he signed, along with Chalmers, an addendum to the note governing prepayment penalties. Doc. #108-7 at 5. Tubwell has not asserted any rights under the note based on this addendum. To the contrary, his amended complaint and his response to the defendants' motion for summary judgment both assert that he was not a party to the note. *See* Doc. #56 at 20 ("Tubwell, not being a party to the actual note signed in the case, could not be considered as an obligator on January 11, 2005, or anytime thereafter until the defendants obtains a written and signed note designating Tubwell as an obligor."); Doc. #141 at 6 ("Tubwell has paid upon a loan which these defendants now admits that Tubwell was not a party to …."). Under these circumstances, the Court concludes that there is no genuine issue of material fact that Tubwell was not a party to the loan. *See Windham v. Harris Cty*., 875 F.3d 229, 233 n.3 (5th Cir. 2017) (court may consider opposing party's brief for purpose of determining genuine issues of material fact); *Isquith ex rel. Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 195 (5th Cir. 1988) (court may treat "factual allegations of the complaint as admissions or stipulations").

On October 21, 2005, First Choice assigned the loan to CitiFinancial Mortgage Company, Inc. Doc. #108-11. CitiMortgage, Inc.—successor by merger to CitiFinancial Mortgage—assigned the loan on August 21, 2015, to PROF-2013-S3 Legal Title Trust, by U.S. Bank National Association. Doc. #108-12. On June 17, 2016, ownership of the loan transferred to Morgan Stanley Mortgage Capital Holdings LLC. Doc. #108-13. Specialized Loan Servicing, LLC ("SLS") began servicing the loan in July 2016. Doc. #108-1 at 81–82, 174–75.

Sometime in 2016, Tubwell attempted to refinance the loan but was denied by Fay Servicing. *See id*. at 26. Fay Servicing told Tubwell he was denied because he was not a party to the loan. *Id*. at 27, 177. In July 2016, Chalmers quitclaimed the property to Tubwell. *Id*. at 80; Doc. #108-14. The following month, in August 2016, Chalmers passed away. Docs. #108-1 at 33, #108-15.

On December 5, 2016, SLS sent a letter addressed to Chalmers advising him that the loan was referred to foreclosure. Doc. #108-1 at 89–90; Doc. #108-18. On December 20, 2016, Tubwell, acting pro se, filed a complaint in the Circuit Court of DeSoto County, Mississippi, against SLS and Morgan Stanley. Doc. #2. The complaint contained multiple counts and included claims for negligence, fraud, breach of contract, violations of consumer protection laws, and injunctive relief, among others. *Id.*

The defendants removed the case to the United States District Court for the Northern District of Mississippi on January 20, 2017. Doc. #1. Five days later, the defendants filed a motion to dismiss. Doc. #7. On September 22, 2017, the Court granted in part and denied in part the motion to dismiss. Doc. #46. The Court dismissed seven counts of the complaint without prejudice and allowed Tubwell fourteen days to amend the complaint to address its pleading deficiencies. Doc. #46 at 25.

On October 23, 2017, Tubwell filed an amended complaint which attempted to cure the deficiencies in his dismissed claims but also added as new defendants First Choice Mortgage Services, LLC, Jennifer Strickland, CitiMortgage, Inc., Fay Servicing, LLC, and Edward J. Fay.[3] Doc. #56. On April 27, 2018, Tubwell filed a "Notice of Service of Discovery Requests" in which he certified that he, that day, served interrogatories, requests for production of documents, and requests for admissions on the defendants by United States Postal Service and e-mail. Doc. #101. On June 4, 2018, the Court dropped First Choice, Strickland, CitiMortgage, Fay Servicing, and Fay as parties to this action because "Tubwell's amended complaint added new defendants without leave of this Court," thereby "exceeding the scope of amendment authorized by this Court." Doc. #107 at 3.

On June 18, 2018, the defendants filed a motion for summary judgment.[4] Doc. #108. Four days later, Tubwell filed a motion to compel responses to his April 27, 2018 discovery requests, Doc. #111; and a motion to strike his deposition and any references to it in "any motion or pleadings," Doc. #112. On July 19, 2018, Tubwell filed "Plaintiff's Motion for Order Finding that Admissions Filed by Plaintiff to Defendants to be Declared Admitted." Doc. #127. The following day, Judge Percy issued an order denying Tubwell's motion to compel, and an order denying Tubwell's motion to strike. Docs. #129, #130. Three days later, Tubwell filed appeals of Judge Percy's July 20 orders. Docs. #132, #133.

---

[3] Of these newly-added defendants, it appears only CitiMortgage and Fay Servicing were served. Doc. #60.

[4] In support of the summary judgment motion, the defendants filed a memorandum brief, Doc. #109; a "Statement of Undisputed Facts in Support of Motion for Summary Judgment," Doc. #110; and multiple exhibits as attachments to the motion, including Tubwell's deposition, Doc. #108-1. The Court struck the statement of undisputed facts but permitted the defendants to amend their memorandum brief within seven days "to the extent they wish to incorporate the contents of the stricken statement of undisputed facts in their briefing." Doc. #115. The Court also allowed Tubwell to respond to the summary judgment motion and amended memorandum within fourteen days of the amended memorandum's filing. *Id.* On June 29, 2018, the defendants filed an amended memorandum in support of their summary judgment motion. Doc. #117.

On August 3, 2018, Tubwell responded to the summary judgment motion,[5] Doc. #141; and two weeks later, the defendants replied, Doc. #148. On August 21, 2018, Judge Percy denied Tubwell's motion to declare his requests for admissions admitted. Doc. #150. Tubwell filed an appeal of the denial on August 30, 2018. Doc. #153.

On February 19, 2019, this Court held a hearing on the defendants' motion for summary judgment and Tubwell's motions to appeal Judge Percy's July 20 and August 21 orders. Doc. #165. At the conclusion of the hearing, the Court took the motions under advisement. On March 29, 2019, the Court denied Tubwell's appeals of Judge Percy's July 20 and August 21 orders. Doc. #168.

**III**
**Analysis**

The defendants seek summary judgment on all claims against them in Tubwell's "Verified Amended Complaint." Doc. #117 at 1. Tubwell's amended complaint contains multiple counts: "Count 1 - Gross Negligence;" "Count 2 - Fraud and Misrepresentation;" "Count 3 - Breach of Contract;" "Count 4 - Breach of Agreement;" "Count 5 - Violation of Fair Debt Collection Act;" "Count 6 – Loan Gouging;" "Count 7 – Plaintiff's Entitlement to Damages, Wrongful foreclosure threats;" "Count 8 - Altering Terms of Contractual Agreement;" "Count 9 - Unlawful Discrimination and Violation of the Equal Credit Opportunity Act on Basis of Income;" "Count 10 - Negligence in Failing to Maintain Accountability;" "Count 11 - Truth in Lending Violation – Recision;" and "Count 12 - Temporary and Permanent Injunction." Doc. #56 at 10–22.[6]

In his response[7] in opposition to the motion for summary judgment, Tubwell did not

---

[5] Tubwell moved for an extension, which the Court granted, to respond to the summary judgment motion. Docs. #122, #163.

[6] The complaint also includes a count titled, "Damages." Doc. #56 at 21.

[7] Tubwell did not file a separate memorandum brief in support of his response as required by Local Rule 7(b)(2).

5

address the claims in Count 2 (fraud and misrepresentation), Count 3 (breach of contract), Count 4 (breach of agreement), Count 5 (violation of Fair Debt Collection Act), Count 6 (loan gouging), Count 8 (altering terms of contractual agreement), and Count 9 (unlawful discrimination and violation of the Equal Credit Opportunity Act). *See generally* Doc. #141. This failure to respond amounts to an abandonment of these claims. *City of Canton v. Nissan N. Am., Inc.*, 870 F.Supp.2d 430, 437 (S.D. Miss. 2012) ("Failure to address a claim results in the abandonment thereof."); *Venezia v. ConocoPhillips Co.*, No. CIV.A. 12-2168, 2014 WL 107962, at *13 (E.D. La. Jan. 9, 2014) ("Failure to address a claim in response to a defendant's summary judgment motion constitutes abandonment of the claim."). Accordingly, summary judgment as to these claims will be granted. Remaining for summary judgment review are Tubwell's claims for (1) Gross Negligence; (2) Damages for Wrongful Foreclosure Threats; (3) Negligence in Failing to Maintain Accountability; (4) Truth in Lending Violation – Recision; and (5) Temporary and Permanent Injunction.

### A. "Count 1 - Gross Negligence"

Tubwell alleges the defendants "intentionally and negligently failed to report [fourteen years of loan payments] to the credit bureau which negligence caused [him] harm …." Doc. #56 at 10. He further complains "[t]he acts of the defendants described … demonstrates … that defendants acted with malice or willful intent to injure [him] …." *Id*. The defendants argue Tubwell's gross negligence claim is preempted by the Fair Credit Reporting Act ("FCRA") and "Tubwell cannot state … a [gross negligence] claim because his Amended Complaint admits that he is not a party to the promissory note" and that there was no duty to report. Doc. #117 at 14, 15.

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47,

52 (2007). "The FCRA preempts state law … negligent reporting claims unless the plaintiff consumer proves '*malice or willful intent to injure*' him." *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 638 (5th Cir. 2002) (citing 15 U.S.C. § 1681h(e)) (emphasis added). Even if a negligence claim is not preempted, a plaintiff must still satisfy the requirements of negligence,[8] which, in Mississippi, are "duty, breach of duty, proximate causation, and injury." *Lovett v. Bradford*, 676 So. 2d 893, 896 (Miss. 1996).

In his summary judgment response, Tubwell asserts that he and "Chalmers entered into the loan jointly, which [created] an obligation [for the defendants] to report to the credit bureau any payment received from either Tubwell or Chalmers," and that because the defendants failed to report "13 to 14 years of steady payments," he suffered harm. Doc. #141 at 2. In reply, the defendants argue that because "Tubwell was not a borrower on the [loan] … nothing was ever reported on [his] credit …." Doc. #148 at 3.

"[W]hether a duty exists in a negligence case is a question of law to be determined by the court." *Enter. Leasing Co. S. Cent., Inc. v. Bardin*, 8 So. 3d 866, 868 (Miss. 2009). As a general rule, "[n]egligence can only proceed from a duty imposed by … contract, or by the statutes of the state, or by a well-defined public policy." *Georgia Cas. Co. v. Cotton Mills Prods. Co.*, 132 So. 73, 75 (Miss. 1931), *overruled in part on other grounds by Hartford Acc. & Indem. Co. v. Foster*, 528 So. 2d 255, 265 n.3 (Miss. 1988). The burden of showing the existence of a duty rests with the plaintiff. *Eli Invs., LLC v. Silver Slipper Casino Venture, LLC*, 118 So.3d 151, 154 (Miss. 2013).

Here, Tubwell had no contract with the defendants. Furthermore, Tubwell has cited no

---

[8] *See e.g.*, *Phillips v. JPMorgan Chase*, No. 1:11-cv-2194, 2012 WL 1004922, at *3–4 (N.D. Ga. Feb. 27, 2012) (analyzing gross negligence claim based on reporting under state law).

authority, and this Court has found none, which would support finding, in the FCRA or any other statute, a duty to report payments of a party unconnected to a loan agreement. Finally, nothing in Mississippi common law would seem to support such a duty. Accordingly, the Court concludes that Tubwell has failed to sustain his burden of showing a duty on the part of the defendants. Even if such a duty existed, Tubwell has offered no evidence or argument that the breach was in any way willful or malicious. Accordingly, Tubwell's gross negligence claim must fail.

### B. "Count 7 - Plaintiff's Entitlement to Damages, Wrongful Foreclosure Threats"

In Count 7, Tubwell "sues the defendants for wrongful foreclosure threats," alleging the defendants "disconnect[ed] all talks with [him]" after he "requested to make payments upon the note …, refinance the property under a lower interest rate …, and keep the mortgage current." Doc. #56 at 15. Tubwell complains, "Defendants wrongful foreclosure threats and attempts were deliberate and designed to intimidate … and destroy plaintiff while defendants disregarded all the procedural due requirements … applicable to foreclosure …." *Id*. at 16. In their motion for summary judgment, the defendants argue a claim for "wrongful foreclosure threats" is not a cause of action recognized under Mississippi law. Doc. #117 at 21–22. Construing Tubwell's allegations liberally,[9] the Court finds their substance sounds as a claim for wrongful foreclosure.

"Mississippi recognizes a claim for wrongful foreclosure where 'an unlawful foreclosure is attempted solely from a malicious desire to injure the mortgagor; or … where the foreclosure is conducted negligently or in bad faith, to his detriment.'" *Stewart v. GMAC Mortg., LLC*, No. 2:10-cv-149, 2011 WL 1296887, at *11 (S.D. Miss. Mar. 31, 2011) (quoting *Nat'l Mortg. Co. v. Williams*, 357 So.2d 934, 935–36 (Miss. 1978)). There is no claim for wrongful foreclosure if a

---

[9] A pleading filed pro se is "to be liberally construed …." *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019).

foreclosure does not occur. *McKinley v. Lamar Bank*, 919 So.2d 918, 930 (Miss. 2005).

Tubwell does not allege that a foreclosure occurred but rather that there were procedural shortcomings regarding the allegedly threatened foreclosure. *See* Doc. #56 at 15–16. Because Tubwell has not established that a foreclosure occurred, his wrongful foreclosure claim fails. Therefore, his request "that this Court require the defendants to pay … for such misplaced and unsupported actions by requiring defendants pay compensatory damages, punitive damages, and costs in a sufficient amount, as determined by jury" will be denied. *Id*. at 16–17. The defendants' motion for summary judgment as to Count 7 will be granted.

### C. "Count 10 - Negligence in Failing to Maintain Accountability"

In Count 10, Tubwell alleges that the defendants' "actions constitute negligence in maintaining accountability of the death records regarding individuals in which maintain loans with such defendants and that the defendants should not profit or take advantage of their own shortcomings." Doc. #56 at 18. Specifically, he complains that the defendants have not (1) "within the lifetime of the loan, performed any obligations required of them by the contract and that which is imbedded in law;" (2) "came forward with information directed to [him] regarding re-finance and lowering the … interest rate;" (3) "offered to allow [him] to sign the actual note which secure the property;" and (4) "talk[ed] to, accept[ed] payments, or negotiate[d] with [him] after learning that Chalmers had actually quitclaimed the property to Tubwell before his death." *Id*. at 18–19.

In seeking summary judgment on this count, the defendants argue that "there is no known law or contract" providing Tubwell a right to sign the promissory note, receive a loan modification, or communicate with the defendants regarding the loan. Doc. #117 at 24–26. In response, Tubwell contends that "[i]f the defendants required [him] to sign the deed of trust then they should have required that he also sign the note" and "[i]f [he] is not allowed to refinance the property or to sign

9

the note then his fate on the loan is guaranteed as failure." Doc. #141 at 5.

As previously discussed, a duty under Mississippi law may flow from a contract, a statute, or general common law. Tubwell, as he admits, is not a party to the promissory note, Doc. #108-7, and has identified nothing in statutes or common law to support the duties he claims. Therefore, the defendants did not have a duty to allow him to sign the promissory note, receive a loan modification, or communicate with them regarding the loan. Accordingly, the defendants' motion for summary judgment as to Count 10 will be granted.

### D. "Count 11 - Truth in Lending Violation – Recision"

Tubwell brings Count 11 under the Truth in Lending Act ("TILA"), seeking "to enforce [his] right to rescind a consumer transaction, to void the claimed security interest in [his] home by the defendants, and to recover statutory damages, reasonable attorney fees and costs by reason of defendants violation of the TILA and Regulation Z …." Doc. #56 at 19. Tubwell has stated that he and Chalmers refinanced a loan with First Choice on January 11, 2005. Doc. #108-1 at 15, 20. Although the Court determined in its prior order[10] that Tubwell's TILA claim was barred by the three-year statute of limitations, Tubwell now alleges that the time to rescind the loan never started because he is not a party to the loan. Doc. #56 at 20.

In certain consumer credit transactions, TILA requires disclosure of the consumer's right to rescind up to three business days following consummation of the transaction, delivery of a notice of right to rescind, or delivery of all material disclosures, whichever occurs last. 15 U.S.C. § 1635(a); 12 C.F.R. §§ 226.23(a)(3), (b). However, "rights to rescind under TILA extend to obligors only," and because Tubwell now acknowledges that he is not a party to the loan, his TILA claim fails. *Falkiner v. OneWest Bank, FSB*, 780 F. Supp. 2d 460, 463 (E.D. Va. 2011) (alteration

---

[10] Doc. #46 at 21–22.

omitted). Thus, summary judgment on Count 11 will be granted.

### E. "Count 12 - Temporary and Permanent Injunction"

In Count 12, Tubwell alleges "[a] temporary and permanent restraining Order is necessary to prohibit the sale of the subject property because irreparable injury … would occur if [his] property were sold by Defendants." Doc. #56 at 20. The defendants argue Tubwell is not entitled to injunctive relief because there is not a substantial likelihood of success on his claims. Doc. #117 at 27. In response, Tubwell argues that if the defendants return all the funds he paid towards the loan, "no temporary or permanent [restraining order] is required." Doc. #141 at 6.

In order to obtain a temporary restraining order or a permanent injunction, a plaintiff must show a substantial likelihood of success on the merits. *Dung Quoc Pham v. Blaylock*, 712 F. App'x 360, 363 (5th Cir. 2017). Because the Court has determined that the defendants' motion for summary judgment will be granted as to all counts alleged in the amended complaint, Tubwell cannot show a substantial likelihood of success and his requests for temporary and permanent injunctive relief will be denied.

### IV
### Request to Amend

In response to the motion for summary judgment, Tubwell raises claims for "Defendants Acquisition of the [L]oan to Mismanage" and "Breach of Duty." Doc. #141 at 4–5. Specifically, he argues "there is nothing from [the defendants] stating that they have not mismanaged the loan or never obtained such for [t]hat very purpose" and "SLS should not have thwarted [his] ability to refinance the loan by telling the company in which Tubwell had attempted to refinance with that Tubwell had no standing to refinance since he did not own the property." *Id*. at 4. It is axiomatic that "claim[s] which [are] not raised in the complaint but, rather, [are] raised only in response to a motion for summary judgment [are] not properly before the court." *Cutrera v. Bd. of Sup'rs of La.*

*State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005). However, when a response to a motion for summary judgment asserts a new claim, a district court should construe the response as a motion to amend the complaint. *Ganther v. Ingle*, 75 F.3d 207, 211–12 (5th Cir. 1996).

Construing Tubwell's response as a motion to amend, the Court concludes that leave to amend must be denied for multiple reasons. First, the motion is untimely, having been filed approximately fourteen months after the May 30, 2017, amendment deadline set in this case. *See* Doc. #31 at 4. Second, in violation of this Court's local rules, the motion does not include a proposed amended pleading. *See* L.U. Civ. R. 7(b)(2). Such undue delay, and the inevitable resulting prejudice to the defendants at this stage of this litigation, justifies denial of leave to amend. *See Smith v. EMC Corp.*, 393 F.3d 590, 598 (5th Cir. 2004) ("Because of the motion's undue delay and undue prejudice to [defendant], the district court did not abuse its discretion in denying ... leave to amend."); *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992) (affirming denial of leave to amend where "the plaintiffs did not propose their amendment until well over a year after they had instituted their actions and several months after discovery on the actions had effectively terminated [and] by the time the plaintiffs proposed their amendment, [defendant] had already moved for summary judgment").

V
**Conclusion**

As to all of Tubwell's claims, the defendants' motion for summary judgment [108] is **GRANTED**. A final judgment consistent with this order will issue separately.

**SO ORDERED**, this 29th day of March, 2019.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**